## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEROY PORTER, | |
| Plaintiff | CIVIL ACTION NO. 1:14-CV-01675 |
| v. | (RAMBO, J.) |
| | (MEHALCHICK, M.J.) |
| DONNA ZICKEFOOSE, Warden, et al., | |
| Defendants | |

### REPORT AND RECOMMENDATION

Leroy Porter is a federal prisoner serving a 327-month sentence for a "felon in possession of a firearm" conviction. Appearing *pro se*, Porter initiated this action by the filing of a complaint on August 27, 2014. (Doc. 1). The complaint brings a federal *Bivens*[1] action alleging violations of Porter's civil rights and seeking compensatory and punitive damages against several officials and correctional officers employed by the Federal Bureau of Prisons ("BOP"), stemming from events that occurred between March and May of 2013 while Porter was incarcerated at USP Allenwood, a high security federal prison located in White Deer, Pennsylvania. (Doc. 1). Porter is currently incarcerated at USP McCreary, a federal prison located in Pine Knot, Kentucky.

Pending before the court is the Defendants' motion to dismiss and/or for summary judgment, which was filed on February 2, 2015. (Doc. 19). On February 17, 2015, Defendants also filed a brief in support (Doc. 23), and a statement of material facts. (Doc. 24). Porter filed his brief in opposition on March 9, 2015, and attached copies of

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

correspondence detailing the formal and informal attempts he made to resolve his complaints. (Doc. 25). Along with his brief in opposition, Porter filed motions for an evidentiary hearing and requesting the appointment of counsel. (Doc. 26). Defendants filed their reply brief on March 23, 2015. (Doc. 27). Having been fully briefed, this matter is now ripe for disposition.

## I.   BACKGROUND

In his complaint, Porter describes several instances where USP Allenwood staff allegedly used excessive force in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. (Doc. 1).

The first incident occurred on March 15, 2013, as Porter exited the dining hall at USP Allenwood after finishing his lunch. (Doc. 1, at 2). Defendants Nathan Muthler and Craig Johnson were assigned to the dining hall exit, where they monitored inmates to ensure that they did not carry out contraband materials. (Doc. 25-2, at 4; Doc. 24-2, at 39-40, 73-74). That afternoon, Porter attempted to leave the dining hall with approximately three cartons of milk, four soups, and one bag of coffee hidden in his shirt as contraband. (Doc. 25-2, at 14). He was stopped by Johnson, who conducted a pat-down frisk, discovered that Porter had contraband items in his shirt, and ordered him to dump the contraband in the trashcan. (Doc. 25-2, at 14; Doc. Doc. 24-2, at 40). Porter placed several contraband items in the trash but kept at least one milk carton hidden in his shirt, and then immediately proceeded through the exit and away from the dining area. (Doc. 25-2, at 14; Doc. 24-2, at 40). Noticing that Porter still had contraband on his person, Muthler followed after him onto the yard of the main compound. (Doc. 25-2, at 14; Doc. 24-2, at 40). Muthler grabbed Porter's left hand, and then as Porter turned around, struck Porter in his left eye. (Doc. 25-2,

at 14). Muthler contends that he only used force because Porter raised his cane in a threatening manner as he turned around. (Doc. 24-2, at 40-41). Porter, on the other hand, asserts that he never raised his cane or attempted to strike Muthler. (Doc. 25-2, at 18). The parties also disagree as to the role Johnson played in the altercation, as Porter claims that Johnson remained back at the dining area and was not on the scene to witness the altercation (Doc. 25-2, at 14), whereas Johnson himself states that he followed Muthler onto the yard of the main compound, watched Porter turn towards Muthler in a threatening manner, and was on hand to restrain Porter against the dining room's exterior wall. (Doc. 24-2, at 75). After being secured, Porter was taken to the health services area and treated for a one-centimeter cut above his left eye. (Doc. 24-2, at 93-94). The treating nurse also noticed a small amount of blood on Porter's coat. (Doc. 24-2, at 93).

Porter talked with the Captain[2] at the health services center that afternoon, and then filed an informal administrative remedy resolution form five days later. (Doc. 25-2, at 23). After this proved unsuccessful, Porter filed a formal administrative remedy complaint at the institutional level on March 23, 2013. (Doc. 25-2, at 18). Warden Donna Zickefoose responded to the complaint on April 3, 2013, and promised that the incident would be reviewed but also told Porter that he would not be informed of the investigation's findings in order to protect Muthler's privacy interests. (Doc. 25-2, at 16). Porter subsequently appealed to the BOP's regional and central levels, but Zickefoose's decision was upheld at each level of appeal. (Doc. 1, at 3; Doc. 25-2, at 7). Defendant Cory Heath, a special investigative agent at USP Allenwood, was appointed to review the altercation between Porter and Muthler.

---

[2] Porter states that he does not know this official's name. (Doc. 1, at 3).

(Doc. 24-2, at 99-100). Heath found that video surveillance footage was unhelpful to his investigation because it did not capture the events in question.  (Doc. 24-2, at 100). Heath also spoke with Porter, and states that Porter "conceded it was possible" that Muthler thought Porter intended to assault him when Porter spun around to face Muthler on the yard of the main compound that afternoon. (Doc. 24-2, at 100-01). Ultimately, Heath found that there was insufficient evidence to conclude that Muthler physically abused Porter. (Doc. 24-2, at 101). Porter, on the other hand, contends that Muthler falsified his own incident report and that the other officers at USP Allenwood subsequently participated in a cover-up on Muthler's behalf. (Doc. 25-2, at 1-2). Notably, however, Porter does not contradict Heath's contention that he admitted it was possible that Muthler could have thought Porter intended to assault him as Porter turned around with his cane. He also fails to challenge Heath's finding that no surveillance cameras recorded the altercation.

The second claim Porter raises is that Defendant Officers Robert Eddy, Dana Temple, David Hughes, and Jeffrey Simpler attempted to poison his food. (Doc. 1, at 2). Porter provides slightly more detail about this allegation in the letters accompanying his brief in opposition, stating that he and his roommate both got sick from food poisoning twice, and that he complained to the assistant warden about the food poisoning in a letter dated May 31, 2013. (Doc. 25-1, at 1).

 Next, Porter claims that the following Defendants, among others, threatened to kill him: Officers Eddy and Christopher Shiposh, Liutenant James Marr, and Physician Assistant Charles Craig. (Doc. 1, at 2). He does not specify when these threats occurred or what form they took.

Porter's remaining claims stem from the events of May 7-8, 2013, where he was left

in four-point ambulatory restraints for a period of 26-28 hours. (Doc. 1, at 2; Doc. 25-2, at 8-11). He was restrained atop a bare mattress without bedding. (Doc. 1, at 2). During this time, Porter was denied food and access to the bathroom, which resulted in him urinating and defecating on himself. (Doc. 1, at 2). At one point, Porter's left arm got loose because one of the restraints would not lock properly. (Doc. 25-2, at 9). Marr responded by entering Porter's cell without being viewed by the surveillance cameras and "kneed" Porter in the shoulder area in a deliberate effort to cause pain. (Doc. 25-2, at 10). Marr then exited the cell and returned with Craig to place Porter into a new set of four-point restraints. (Doc. 25-2, at 10-11). Porter told Craig that Marr had just assaulted him a few minutes before, but Craig did not take any action in response. (Doc. 25-2, at 10-11). Furthermore, a team of officers including Eddy, Temple, and Hughes participated in restraining Porter and witnessed Marr's assault, but also failed to intervene or object. (Doc. 1, at 3; Doc. 25-2, at 10-11). Porter states that he filed a complaint with Warden Zickefoose about the entire incident and that Zickefoose initiated an investigation in response, but Porter does not say whether anything came about from the investigation.

## II.   LEGAL STANDARDS

### A.   RULE 12(b)(1) STANDARD

A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *Gould Electronics Inc. v. United States*, 220 F. 3d 169, 176 (3d Cir. 2000). In a factual attack under Rule 12(b)(1), the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction. *Gould Electronics Inc.*, 220 F.3d at 178. This 12(b)(1) factual evaluation may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed. *Mortensen*

*v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891-92 (3d Cir. 1977). In addition, "[a] federal court may *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) when the allegations within the complaint 'are so attenuated and unsubstantial as to be absolutely devoid of merit, . . . wholly insubstantial, . . . obviously frivolous, . . . plainly unsubstantial, . . . or no longer open to discussion.'" *DeGrazia v. F.B.I.*, 316 F. App'x 172, 173 (3d Cir. 2009) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir. 1994).

      B.  RULE 12(b)(6) STANDARD

      Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

      In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable

inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). A plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court of the United States held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

A document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

### C. RULE 56 SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility

determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Moreover, all parties must receive an opportunity to present material to the court when a motion to dismiss is converted into a motion for summary judgment. *Rose v. Bartle*, 871 F.2d 331, 340 (3d Cir. 1989). Here, the Court finds Porter clearly received that opportunity, and availed himself of it by attaching several documents alongside his brief in opposition to show that he properly exhausted administrative remedies with regard to the alleged assault by Muthler and Johnson.[3] (Doc. 25-2).

**III.   DISCUSSION**

**A. SOVEREIGN IMMUNITY**

Defendants contend that Porter's claims should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) to the extent that Porter asserts *Bivens* claims against Defendants in their official capacities. (Doc. 23, at 18). Sovereign immunity constitutes a jurisdictional bar to claims against the United States and its agencies, unless Congress has specifically waived such immunity. *FDIC v. Meyer*, 510

---

[3] The Court also deems Porter's motion for an evidentiary hearing (Doc. 26) to be unnecessary based upon this same reasoning. The time for Porter to produce evidence to refute the material facts alleged by Defendants was in Porter's brief in opposition and its accompanying exhibits. *See Cardona v. Bledsoe*, No. 3:CV-11-0054, 2012 WL 4327042, at *13 n.14 (M.D. Pa. Sept. 20, 2012). Porter understood this and did indeed produce evidence to show that his claims against Muthler and Johnson were properly exhausted. (Doc. 25-2). Furthermore, he makes no showing as to why an evidentiary hearing is needed or whether there is any evidence that he could produce at a hearing that he was unable to present in his complaint and brief. *See Cardona*, 2012 WL 4327042, at *13 n.14 (evidentiary hearing unwarranted where prisoner-plaintiff merely wished to reiterate the same arguments he had already made in his pleadings and brief).

U.S. 471, 475 (1994). Moreover, "[a]n action against government officials in their official capacities constitutes an action against the United States [and is] barred by sovereign immunity, absent an explicit waiver." *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008); *Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007). *Bivens* does not waive sovereign immunity with respect to claims brought against federal employees sued in their official capacities. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."). Accordingly, the Court will construe each of Porter's claims as being brought against Defendants solely in their individual capacities.

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants assert that Porter failed to exhaust his administrative remedies with respect to all but one of his claims. (Doc. 23, at 22). Before bringing a *Bivens* action concerning prison conditions, a prisoner must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). "[I]t is beyond the power of this court . . . to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). Failure to exhaust administrative remedies is an affirmative defense that must be pleaded and proven by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002) ("Prison officials are likely to have greater legal expertise and, as important, superior access to prison administrative records in comparison

to prisoners.") (alteration omitted). Moreover, § 1997e(a) requires "proper" exhaustion of administrative remedies, meaning strict compliance with BOP deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89–95 (2006). "A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." *McKinney v. Kelchner*, No. 1:CV-05-0205, 2007 WL 2852373, at *3 (M.D. Pa. Sept. 27, 2007) (citing *Spruill v. Gillis*, 372 F.3d 218, 227–32 (3d Cir. 2004)).

The BOP has established a multi-stage administrative remedy process through which an inmate may seek formal review of an issue related to any aspect of his confinement. *See* 28 C.F.R. §§ 542.13–542.15. At the first stage, the inmate is required to present an issue of concern *informally* to staff in an attempt to informally resolve the issue without a formal request for an administrative remedy. 28 C.F.R. § 542.13(a). If unable to satisfactorily resolve the issue informally, the inmate must file a formal written administrative remedy request on BOP Form BP-9. 28 C.F.R. § 542.14(a). Ordinarily, the inmate's BP-9 must be submitted to the Warden within 20 calendar days following the date on which the basis for the administrative remedy request occurred. 28 C.F.R. § 542.14(a). If dissatisfied with the Warden's response, the inmate may submit a written appeal to the appropriate Regional Director on BOP Form BP-10. 28 C.F.R. § 542.15(a). Ordinarily, the inmate's BP-10 must be submitted within 20 calendar days of the date the Warden signed his or her response. 28 C.F.R. § 542.15(a). If dissatisfied with the Regional Director's response, the inmate may submit a written appeal to the BOP's General Counsel on BOP Form BP-11. 28 C.F.R. § 542.15(a). The inmate's BP-11 must be submitted within 30 calendar days of the date when the Regional Director signed his or her response. 28 C.F.R. § 542.15(a). This review

by the BOP's General Counsel is the final administrative appeal for administrative remedy requests by federal prisoners. 28 C.F.R. § 542.15(a). BOP regulations also expressly provide for extensions of these deadlines in a variety of circumstances. *See* 28 C.F.R. § 542.14(b)(1); 28 C.F.R. § 542.15(a).

The Defendants contend that Porter failed to exhaust his administrative remedies with respect to all of his claims except the alleged assault outside the dining hall by Muthler and Johnson. (Doc. 23, at 22). In support, they submit a declaration from K. Michael Sullivan (Doc. 24-2, at 1-10), an attorney at USP Allenwood, along with a printout of Porter's complete administrative remedy history from July 21, 2011, the date he arrived at USP Allenwood, to August 27, 2014, the date he filed the instant complaint. (Doc. 24-2, at 15-23). Sullivan states in his declaration that he examined Porter's administrative remedy record during that time period and found only four administrative remedies relating to the incidents Porter describes in his complaint. (Doc. 24-2, at 6). Specifically, Sullivan notes that Porter filed four administrative remedies pertaining to the allegation that he was assaulted by Muthler and Johnson: an institutional-level remedy received on March 27, 2013 (no. 727784-F1), an appeal to the regional office received on April 24, 2013 that was rejected for being filed in the improper form (no. 727784-R1), a second appeal to the regional office received on May 6, 2013 that presumably corrected the prior defect (no. 727784-R2), and an appeal of the regional office's denial to the General Counsel's central office (no. 727784-A1). (Doc. 24-2, at 6-8). A review of the administrative remedy printout confirms Sullivan's finding that Porter's claim relating to the assault by Muthler was properly exhausted. (Doc. 24-2, at 19-20). Importantly, the administrative remedy printout also confirms that Porter has not exhausted any other remedies by filing appeals up to the

central office level since the beginning of 2013. (Doc. 24-2, at 18-23). Because all of Porter's claims occurred after March of 2013, Defendants have made a prima facie showing that Porter's allegations of assault against Muthler and Johnson is his only claim in the instant complaint that was properly exhausted.

Porter alleged in his complaint that he "filed all [his] grievances complaining of everything that [the Defendants] did to [him]." (Doc. 1, at 3). However, in opposing Defendants' motion to dismiss and for summary judgment, Porter did not present any evidence or even allege that he exhausted his administrative remedies with regard to the attempt to poison his food, the death threats, and the potential claims stemming from the incident where Porter was placed in four-point ambulatory restraints for 26-28 hours straight.[4] Instead, Porter only produced evidence in support of his assertion that he properly exhausted administrative remedies with regard to the assault claim against Muthler and Johnson (Doc. 25-2, at 1-7), a contention that Defendants already concede. (Doc. 24, at 5-7). Although there is a narrow exception to the strict exhaustion requirement that occurs when prison officials directly cause the inmate's procedural default, Porter also fails to allege that this exception applies to him. *See Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000). Accordingly, there is no genuine issue of material fact as to Porter's failure to exhaust administrative remedies with respect to all of his claims except the assault alleged against Muthler and Johnson. The Court therefore recommends that Defendants' motion for summary judgment be granted with respect to all Defendants and all claims except Porter's

---

[4] Porter produced some documents relating to his confinement in restraints, but this appears to be a letter of complaint rather than an actual grievance. (Doc. 25-2, at 19-22). In any event, Porter does not provide evidence that he filed a single formal administrative remedy with regard to this incident.

assault claim against Muthler and Johnson.[5]

### C. CLAIM AGAINST DEFENDANT JOHNSON SHOULD BE DISMISSED FOR LACK OF PERSONAL INVOLVEMENT

Although Porter names both Muthler and Johnson as Defendants in his complaint, Porter makes clear in his brief in opposition and the attached documents that Muthler was the only officer to strike him during the incident outside the dining hall. (Doc. 25-2, at 14). "A defendant in a civil rights action must have personal involvement in the alleged wrongdoing . . . ." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). These "[a]llegations of . . . actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode,* 845 F.2d at 1207. Moreover, "[a] defendant . . . cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). Here, Porter affirmatively states that Johnson was not personally involved in the assault outside the dining hall. (Doc. 25-2, at 14). In fact, Porter goes so far as to state that "Johnson was inside . . . by the kitchen [and] was not on the scene" when Muthler struck Porter in the face. (Doc. 25-2, at 14). Because Porter does not assert that Johnson had the requisite personal involvement in the Eighth Amendment violation, the Court recommends that Johnson be dismissed from this case.[6]

---

[5] Porter also fails to allege that Defendants Cerney, Cienki, Gabrielson, Heath, Hottenstein, Jenkins, and Zickefoose were personally involved in any of the claims he brings. Because Porter does not raise a material dispute of fact to contest Defendants' showing that the assault claim against Muthler and Johnson was the only claim that Porter fully exhausted while incarcerated at USP Allenwood, he could not possibly have a properly exhausted claim against any of these seven Defendants, either.

[6] Although the Court notes that Johnson never alleged he lacked personal involvement in the supposed Eighth Amendment violation, *sua sponte* dismissal is

*(footnote continued on next page)*

D.  EIGHTH AMENDMENT EXCESSIVE USE OF FORCE CLAIM AGAINST
    MUTHLER

Porter's only remaining properly exhausted claim is his allegation that Muthler used excessive force in assaulting him outside the dining hall. "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Hudson v. McMillian*, 503 U.S. 1, 4 (1992). "The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency." *Tompkins v. Cnty. of Lackawanna*, No. 1:CV-11-1147, 2013 WL 593756, at *4 (M.D. Pa. Feb. 14, 2013) (citing *Hudson*, 503 U.S. at 8). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Courts must evaluate the following factors in determining whether the use of force is excessive under the Eighth Amendment: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)

---

appropriate where a plaintiff's own statements reveal that a particular claim must fail. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

(quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)) (internal quotations omitted).

Defendants present declarations from Muthler (Doc. 24-2, at 39-44), Johnson (Doc. 24-2, at 73-78), the nurse who treated Porter after the incident (Doc. 24-2, at 92-95), and investigative agent Heath (Doc. 24-2, at 99-102) in support of the position that Muthler's conduct did not rise to the level of a constitutional violation. Combined, the facts and evidence marshaled by Defendants make a prima facie showing that Muthler and Johnson are entitled to summary judgment. Fed.R.Civ.P. 56(a). The Court therefore must determine whether Porter raises a genuine dispute of material fact that would preclude summary judgment. Fed.R.Civ.P. 56(a). Applying the *Whitley* factors while drawing all reasonable inferences in Porter's favor, the Court concludes that a reasonable jury could find that Muthler engaged in excessive force.

With regard to the first *Whitley* factor, the need for the use of force, the Court finds that there was some need for the application of force, but that need was minimal. Both Muthler and Johnson stated in their declarations that Porter attempted to exit the dining hall with contraband food products hidden in his shirt, that food products can cause health and safety concerns if allowed back into inmates' cells, and that Porter ignored an order to return and discard the contraband food products. (Doc. 24-2, at 39-40, 73-75). Courts within the Third Circuit have consistently held that corrections officers are warranted in the application of some level of force in an effort to retrieve contraband from inmates. *See, e.g.*, *Rister v. Lamas*, No. 4:10-CV-1574, 2013 WL 786420, at *5 (M.D. Pa. Mar. 1, 2013) (inmate suspected of possessing razor); *Tompkins v. Cnty. of Lackawanna*, No. 1:CV-11-1147, 2013 WL 593756, at *4 (M.D. Pa. Feb. 14, 2013) (inmate suspected of possessing tobacco); *Santiago v. Fields*, No. 05-CV-4884, 2009 WL 693642, at *5 (E.D. Pa. Mar. 12, 2009) (inmate

suspected of potentially possessing a razor). Porter freely admits that he tried to elude Muthler and Johnson with contraband hidden in his shirt after already being stopped by them once. (Doc. 25-2, at 14). However, given the relatively benign nature of the contraband at issue and the fact that Porter was an older inmate with health problems, the amount of force arguably needed to ensure Porter complied with orders was not substantial. Accordingly, there was a need for Muthler to apply at least some force, but a genuine issue of material fact remains as to whether anything more than minimal force was needed. Defendants also allege that the use of force was necessary because Porter raised his hand and cane in a reasonably-perceived threat to strike Muthler. (Doc. 24-2, at 40-41, 74-75). They support this contention with Heath's declaration, which states that during Heath's investigation of the altercation Porter conceded in an interview that it was possible that Muthler thought Porter intended to assault him. (Doc. 24-2, at 100-01). Porter does not directly contest Heath's statement, but he attaches documentation from the administrative remedy process in which Porter states he "never at any time raise[d his] cane [or his] hand in [a] threatening manner or attempted to strike [Muthler]." (Doc. 25-2, at 18). Accordingly, a factual dispute remains as to whether Porter posed a reasonably-perceived threat that would warrant Muthler to use force beyond the minimal amount needed to secure the contraband food products.

The second *Whitley* factor considers the relationship between the need and amount of the force used. Given that corrections officers may apply some force to prevent inmates from fleeing with contraband, the level of force used against Porter was moderate. Muthler states that he grabbed Porter's arm and then pushed him back against the wall with Johnson's assistance. (Doc. 24-2, at 41). Taking into account Muthler's statement that he

perceived an imminent threat of assault from Porter, the amount of force used was proportionate with the situation. However, Porter claims he never raised his cane in a threatening manner. (Doc. 25-2, at 18). Although Porter does not refute that it was possible Muthler thought Porter intended to assault him, a jury could find that it was unreasonable for Muthler to believe that Porter presented a threat if he never raised his hand or cane. Porter also alleges that Muthler struck him directly in the face as opposed to grabbing Porter by the arm and pushing him against the wall with Johnson's assistance. (Doc. 25-2, at 14). Porter's statement that Muthler struck him directly in the face would constitute a slightly more substantial application of force. Accordingly, assuming all disputed facts in Porter's favor, the second factor supports a finding that Muthler is not entitled to summary judgment because there is a genuine issue of material fact as to whether the amount of force used was proportionate to the perceived danger. *See Hudson*, 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.").

The third *Whitley* factor is the extent of injury inflicted. "While the Eighth Amendment does not protect an inmate against an objectively *de minimus* use of force, prison officials who 'maliciously and sadistically use force against an inmate violate contemporary standards of decency even if the resulting injuries are not significant.'" *Wesley v. Hollis*, No. CIV.A. 03-3130, 2007 WL 1655483, at *8 (E.D. Pa. June 6, 2007) (quoting *Smith v. Mensinger*, 293 F.3d 641, 648-49 (3d Cir. 2002)) (internal citations omitted). In his declaration, the treating nurse stated that Porter suffered a one-centimeter laceration above his left eye that was closed with dermabond. (Doc. 24-2, at 93). The nurse also noticed some bleeding, which he was able to stop without difficulty. (Doc. 24-2, at 93). In *Hudson*, the

Supreme Court considered similar injuries suffered by a prisoner-plaintiff and deemed the injuries to be "minor" although "not *de minimis* for Eighth Amendment purposes." *Hudson,* 503 U.S. at 10. The Court sees this as an appropriate characterization of Porter's injuries. *See Woodley v. Al-Ayoubi*, No. CIV.A. 09-1403 KSH, 2011 WL 4594204, at *8 (D.N.J. Sept. 27, 2011) (denying summary judgment where plaintiff's injury was a "minor lip laceration"). As the Supreme Court made clear in *Hudson*, even minor injuries can sustain an Eighth Amendment excessive force claim. 503 U.S. at 10.

The fourth *Whitley* factor in determining whether Muthler used excessive force is the extent of the reasonably-perceived threat posed to the safety of staff and inmates. As noted above with regard to the first and second factors, the fact that Muthler knew that Porter had contraband hidden in his shirt constituted a small threat in and of itself because dining hall contraband could be used to make intoxicants or fashioned into weapons, although cartons of milk certainly appear to be among the less dangerous contraband goods. (Doc. 24-2, at 39-40, 73-75). *See Rister*, 2013 WL 786420, at *5 ("Once Plaintiff disobeyed repeated orders and became resistant [to demands to turn over the suspected contraband], Defendants reasonably believed that the use of force was necessary to protect the officers and inmates present and to effect compliance with prison rules and regulations."). Upon factoring in Defendants' statement that they believed Porter was about to assault Muthler with his cane, the perceived risk of threat becomes much more serious. However, as discussed above, Porter's contention that he never raised his hand or cane could lead a reasonable jury to conclude that Muthler's perception that Porter threatened him with force was unjustified. The Court therefore concludes that a material dispute of fact remains as to the extent of the reasonably-perceived threat posed to Muthler.

The final consideration under *Whitley* is whether the corrections officers employing the force made an effort to temper the severity of their response. 204 F.3d at 106. Here, Muthler, Johnson, and the treating nurse all state in their declarations that Porter was taken to health services for a medical evaluation and treatment as soon as he was restrained. (Doc. 24-2, at 41, 75, 93). *See Wright v. Snyder*, No. CIV.A. 00-490-SLR, 2002 WL 1821583, at *3 (D. Del. July 8, 2002) ("[Defendants] tempered the severity of their response by taking plaintiff to see a nurse at Prison Health Services after he was sprayed, where the nurse relieved the burning sensations from plaintiff's facial areas."). Porter also states that Defendants took him to receive treatment directly after the incident. (Doc. 1, at 2). The Court thus finds that fifth and final *Whitley* factor supports Defendants' contention that the use of force was not excessive. Nevertheless, in reviewing each of the *Whitley* factors in conjunction with Porter's allegations, the Court concludes that Porter has established a genuine issue of material fact as to whether excessive force was used by Muthler.

## E. QUALIFIED IMMUNITY

As a final argument, Defendants assert that Muthler is entitled to qualified immunity. Qualified immunity provides not merely a "defense to liability," but rather "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). It is therefore important to "resolv[e] immunity questions at the earliest possible stage in the litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Officials performing "discretionary functions" are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Pearson*, 555 U.S. at 231. Also, if an official reasonably believes his conduct to be lawful, he is protected by qualified immunity, which affords "ample room for mistaken judgments by protecting all

but the plainly incompetent or those who knowingly violate the law." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 254 (3d Cir. 2010).

A qualified immunity determination involves two distinct inquiries. The first inquiry evaluates whether the defendant violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). The second inquiry assesses whether the right in question was "clearly established" at the time the defendant acted. *Pearson*, 555 U.S. at 231–32; *Saucier*, 533 U.S. at 201–02. A right is "clearly established" if a reasonable actor under the circumstances would have known that his or her conduct impinged upon constitutional mandates. *Broadwater v. Fow*, 945 F. Supp. 2d 574, 585 (M.D. Pa. 2013). Because, as stated above, Muthler is unable to show at this summary judgment stage that he did not violate a constitutional right, he must show that his actions were not "clearly established" as a constitutional violation in order to avail himself of qualified immunity.

Defendants contend that Muthler acted in accordance with BOP policy and that he reasonably believed his conduct to be lawful under the circumstances. (Doc. 23, at 34-35). However, Defendants' argument that Muthler did not violate a clearly established right is based on the same facts that Porter has already disputed sufficiently to preclude summary judgment. Specifically, Defendants contend that Muthler is entitled to summary judgment because Porter "raised his cane in an aggressive and threatening manner" and that "Muthler's response was to grab Porter's hand to prevent him from assaulting him." (Doc. 23, at 35). These allegations are wholly inconsistent with the facts alleged by Porter. In determining whether a constitutional right is clearly established for the purpose of qualified immunity in a motion for summary judgment, the Court still must resolve factual disputes in Porter's favor. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 194 n.12 (3d Cir. 2005).

For the reasons stated above in evaluating the merits of Porter's excessive force claim against Muthler, there remain genuine disputes of material fact that preclude a finding that Muthler acted reasonably under the circumstances.

## IV.   RECOMMENDATION

Based on the foregoing, it is recommended that:

1. Defendants' motion to dismiss and/or for summary judgment (Doc. 19) be **GRANTED** in part and **DENIED** in part;

2. Defendants' motion for summary judgment be **DENIED** as it pertains to Porter's excessive force claim against Defendant Muthler, without prejudice to filing a subsequent motion for summary judgment after discovery has been completed;

3. Defendants' motion for summary judgment be **GRANTED** as to all other Defendants, and the Clerk of Court's office be directed to **TERMINATE** Defendants Cerney, Cienki, Craig, Eddy, Gabrielson, Heath, Hottenstein, Hughes, Jenkins, Johnson, Marr, Shiposh, Simpler, Temple, and Zickefoose from the instant action;

4. Plaintiff's motion for an evidentiary hearing (Doc. 26) be **DENIED**; and

5. The matter be remanded to the undersigned for further proceedings.

BY THE COURT:

Dated: **August 10, 2015**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

LEROY PORTER,

               Plaintiff

     v.

DONNA ZICKEFOOSE, Warden, et al.,

               Defendants

CIVIL ACTION NO. 1:14-CV-01675

(RAMBO, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 10, 2015**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: **August 10, 2015**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**